Good morning, may it please the court. My name is Meredith Gallen and I'm a student in UCLA's School of Law's Ninth Circuit Clinic. Along with my colleague Margaret Mazur, I am serving as pro bono counsel for the appellant in this case, Mr. Pedro Miramontes. Ms. Mazur and I are going to be splitting our argument time and we'd like to reserve one minute for rebuttal. How do you propose to split your time? I will be talking for five minutes and then Ms. Mazur will come up and continue with the rest of our argument time. We can keep track of the clock. Very well. Thank you. It was error for the district court judge in this case not to provide the jury with the alternative methods instruction requested by Mr. Miramontes. Under the law in this circuit, parties are entitled to have juries instructed on their theories of the case so long as those theories are supported by the evidence and the law. Mr. Miramontes' alternative methods jury instruction is clearly supported by the law. In Brewer, this court queried whether alternative methods was an accepted part of the reasonableness inquiry required under Graham. But months later, in Bryan v. McPherson, this court noted the settled principle that officers must consider less intrusive methods of effecting the arrest and that the presence of feasible alternatives is a factor to include in our analysis. This court has continued to recognize the importance of alternative methods as a factor in the totality of the circumstances analysis. Let me stop you just a little bit. I was a lawyer once, and I had to put jury instructions to the court. And you look at these jury instructions, and sometimes the jury instructions are printed right out there, and you know you've got to include them. But then other times, the jury instruction is in a bracket. And in the bracket, it's not necessarily to include them. It depends on the circumstances of the particular situation, correct? Right. And this particular factor, number six, is in the bracket, right? It is, Your Honor. And so at that point, when it's in the bracket, I guess I'm trying to figure out, at that point, we have to really look at whether the judge should give the instruction or not. So what's the standard to review for that? The standard here is whether or not the... What is my standard? When I look over the top at the old DJ and whether he ought to give him the instruction, what's my standard? It's whether or not that instruction is supported by the law and by the evidence. And what deference do I need to give to the district court? For this particular case? Yeah. It's a discretionary standard. It's abuse of discretion, right? So all I'm trying to lead you to is now I've got to see . . . I've got a standard I've got to look at. This is not whether I do it, but whether the district court has some discretion in doing it. That's true, Your Honor. And if I look at Wilkinson v. Torres, if I read that, I'm a little worried because it says in Wilkinson v. Torres, our 2010 case, a reasonable use of force encompasses a range of conduct and the availability of a less intrusive alternative will not render conduct unreasonable. So at that point, I'm saying to myself, okay, it's not necessary. So now I've got to look at what the district judge did. And so I guess my worry about this is why is it improbable that the district court could have concluded that including Factor VI in the instructions, where it's not clear that there's a less intrusive use of force would be practical, that the district court thought maybe that would unduly focus the jury's attention on hypothetical alternatives? Well, it's important to note that alternative methods has been acknowledged by this court to be a factor that should be considered. No, that's not true. I don't think you can find that. I think you find, just like the instructions suggest, it's in brackets. Now, I can go through your cases if you want me to, but I'm just saying here we have an abuse of discretion standard, which you've agreed with me, and now we're trying to decide whether the district court did it absolutely, positively wrong. And we contend that in failing to provide the one jury instruction that was requested by our client, which was supported by his theory of the case, and choosing to provide the instructions that were advanced by the officers, that the court highlighted to the jurors that their theories of the case were legally permissible while the theory... Did counsel get to argue everything he wanted about the case? Did he get to ask the questions he wanted about the case? Did he get to argue in closing arguments all of the theories he had about the case? The only thing you're saying to me is that he ought to have a jury instruction that is discretionary with the court as to whether to give. The purpose of jury instructions are to provide the court with a chance to highlight to the jury the most important legal theories that they should keep in mind when making their decision. And we contend that in neglecting to provide the legal theory that was advanced by our client, that jurors were likely, therefore, to have not given weight to that, even if those arguments were made during examinations and closing arguments. They were made, weren't they? The arguments were made. They had the possibility. Even if they were, they were made. Not only they had the possibility, they made them. Indeed. If I may, I'd like to cede the rest of my time to my co-counsel. You may do so, counsel. Your Honor, I'd like to pick up on the questions that you had regarding whether or not the Would you introduce yourself for the record, please? I'm sorry, Your Honor. May it please the court. My name is Margaret Mazur, and I represent Pedro Miramontes in this case. Thank you. The arguments were made below, but Your Honor touched on the question of abuse of discretion and was concerned that the district court might think that giving the sixth optional factor would unduly focus the jury on the use of alternative methods. But in this case, the five factors that were given focused the jury on the facts that occurred at the time of the incident and focused the jury on the defendant's version of the case. Mr. Miramontes' version of the case was that the officers on the scene had alternatives available to them that they could have employed. And the sixth factor Are you suggesting counsel did not emphasize those factors as he was making his argument or as he was doing his questioning? That Mr. Miramontes counsel? Right. No, he did review those factors, Your Honor. But those factors involve, each of those five factors involve the events that actually occurred on the scene. And none of those five factors involve the events that the officers, given the circumstances at the time, could have opted to do. So the officers, knowing their circumstances at the time, could have opted to use less force. They could have issued alternative commands. They could have had other officers help. You're making the same argument he made to the jury. The same exact argument he made to the jury. The only thing I'm saying is the court, having instructions well in front of him that everybody knew ought to be given, and then having a part of the instruction that was well in brackets, could have concluded that including factor six would unduly focus the jury's instruction on hypothetical alternatives, leading them to improperly discount the other relevant factors. But, Your Honor, without including factor number six, the counsel below, while he did make the arguments to the other factors, he was unable to focus the jury's attention on the ability of the officers to engage in alternative methods. Did anybody limit what he could say? No, Your Honor, no one did. And, Your Honor, you mentioned the Wilkinson case. A reasonable use of force encompasses a range of conduct, and the availability of less intrusive alternatives will not render conduct unreasonable. But this court in Bryan held that alternative methods available to the officers to apprehend the suspect, considering those methods, is not in tension with the idea that other methods may be available. So in Bryan in 2000, which is much more similar to our case, there the suspect was driving under the influence of alcohol. He was pulled over. But even if I look at Bryan, you can't say that Bryan holds that the available alternatives factor must be included every time. No, it does not. It's not a jury instruction case, Your Honor. But Bryan does hold that the availability of alternative methods is an important factor to look at in the analysis of 1983 cases. And as this court said in Smith, when giving jury instructions... Not only that, but Nelson doesn't either. That was the other case cited. It just said the availability of the alternative method is a relevant factor. That's right, Your Honor. Nelson is not a jury instruction case. But as this court held in Smith, when looking at the jury instructions, the court must do a very careful analysis of the facts and circumstances of the case. And we argue here that it was error for the court not to include the sixth alternative factor in the jury instructions here. If I may, I'd like to reserve my time for rebuttal. All 23 seconds. All 23 seconds, Your Honor. Very well, counsel. Thank you. We'll hear from the other side. Good morning, Your Honors. Moses Johnson, Assistant City Attorney on behalf of Officers Clevos, Officers Berger, and Sergeant Friesen. Your Honor, I think this case is on all fours with Brewer. Brewer is cited in the model jury instructions as one of the cases to consider. And that holds that plaintiff's theory of the case instruction was adequately covered by the standard instruction given here that lists five factors. As Your Honor has pointed out, this is an abuse of discretion standard. This is a very high standard of review for plaintiff to overcome and get a reversal. They have to show that the chief judge who heard this case was just flat out wrong. Not that this court, if it was the trial judge, might have concluded differently. And basically, that's what the court said on the record. The court said, look, this is an abuse of discretion standard. As long as I lay out my rationale, the court's going to affirm me on appeal. He really didn't say abuse of discretion. He said, I don't think I'd be reversed either way. That's what she said. And in Brewer, the court looked at that. And the court held that the plaintiff wasn't entitled to the instruction that they wanted, that you have to consider whether the officers had alternative courses of action. Because, let's face it, every time an officer's out in the field and they got a suspect who's resisting arrest, generally they got to make a very quick decision, how am I going to stop this threat? I think all of us could look back at anything we do and say, gee, could I have done it a little bit differently? That's not the standard. Under Graham and its progeny, as followed by this court in many, many cases, including in Brewer, counsel brought up Bryan. Well, actually, the Bryan footnote refers to Gregory, which Gregory, a 2008 case, also held, citing to the Forrester case, that police officers are not required to use the least intrusive degree of force possible. The question is, is what they did reasonable? And the jury instruction covers that. And defense counsel, or excuse me, plaintiff's counsel, argued that to the jury. He argued the leg sweep wasn't reasonable. Supposing that I say you're wrong, the court abused its discretion. Is this a case for harmless error? Yes. Why? Because the jury heard all of the arguments plaintiffs wanted to make. Plaintiff has to show that the jury would have come to a different result. All they argue in their brief is, well, it's possible. Well, anything's possible. The jury heard all the evidence. Plaintiff was not limited in his cross of the officers. He was not limited in his arguments to the jury. He argued that they should have done something different than a leg sweep. Didn't really point out what that was. And the jury just didn't buy it. It isn't like we have some evidence where they had a juror declaration that, gee, if I had known about this factor six, I would have voted a different way. We just have counsel speculation that . . . Well, frankly, I don't think they'd have got that affidavit in even if they'd gone after it. Probably not. Under the present standard, if I were the DJ, I wouldn't have let it in. One of my colleagues, Reinhart, somebody like that, might have said I was wrong, but I don't think you could hit it in. I agree with you, Your Honor. I understand what this court and other justices held in Bryan, but Bryan was a totally different case involving tasers. The officer used his hands. Plaintiff was resisting. He got one of his hands free. The officer was concerned he was going to lose his grip on him because he only had one hand on one of his hands. He had to eliminate the threat, and what officers are trained to do throughout California through post is you take them to the ground. And what he did here is he used a leg sweep. But because of the position he was in, he couldn't brace the plaintiff's fall. Well, but who caused plaintiff to hit the ground? Plaintiff did. All he had to do was submit, and none of this would have happened, and he never would have been taken to the ground. Unfortunately, sometimes suspects seem to think that they can do whatever they want but not take responsibility for the consequences of their actions. The officer did nothing wrong. This is an abusive discretion standard. The court listened to all the evidence. We had an intelligent discussion about it, and she said this is not a clear case where the officer had door A and door B, and door B was a clear choice involving no force that would have hurt the suspect. She believed this was a split-second decision the officer had to make, which he did, and that what he did was reasonable under those circumstances. Yes, there were other officers there, but they were a ways away. This suspect hadn't even been searched yet. The officer didn't know if he had a gun. He didn't know why he ran three miles from the police when he was drunk. He didn't know why he didn't follow commands to begin with. All of that raises red flags on officers, and then when someone resists, they want to get them under control as quickly as possible, which is what Officer Berger did. Took him down to the ground, they got him cuffed, and that was the end of it. But yes, he was taken down to the ground. Now, we're not saying he didn't get cut up and he didn't get scraped and he didn't get hurt a little, but that doesn't mean what the officer did was unreasonable. This is a totality of the circumstances. Jury instruction, it covers the gram, three factors plus two more. It gave plaintiffs every opportunity to argue all of those factors to the jury, just like I did. Apparently the jury just didn't buy plaintiffs' view of the facts and believed the officers. Thank you, Counsel. Thank you. Ms. Meeser, you have a little time. Very briefly, Your Honor. Counsel focused on Brewer. This case is not Brewer. In Brewer, there was a generic totality of the circumstances instruction given. In this case, there was a factored instruction given. When a factored instruction is given, the jury is likely to focus on those factors to the exclusion of other factors in the case. And for that reason, it was not harmless error. The factors given instructed the jury to consider the events that actually occurred. The sixth factor requested asked the jury to consider what the officers could have done with the circumstances known to them at the time, not with 20-20 hindsight. And based on those factors, I believe my time is up, Your Honor. It is up. Thank you very much, Counsel. The case just argued will be submitted for decision. And once again, on behalf of the panel, I would like to express my appreciation to UCLA Law School and to Ms. Gallin in particular, as well as to our supervising attorney, Ms. Meeser. Thank you very much for helping us out on this pro bono case.
judges: Noonan, O'scannlain, Smith